50253-LSK

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ALEXX LEE,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>JOSEPH McNEAL, INDIVIDUALLY and IN HIS OFFICIAL CAPACITY AS AN AGENT OF DOLTON POLICE DEPARTMENT and VILLAGE OF DOLTON, and VILLAGE OF DOLTON,<br><br>　　　　　　　　　　Defendants. | No. 07 C 6856<br><br>Judge Der-Yeghiayan<br><br>Magistrate Judge Denlow |

### DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

NOW COME Defendants, VILLAGE OF DOLTON and JOSEPH MCNEAL, by and through their attorneys, Querrey & Harrow, Ltd. pursuant to Local Rule 56.1, provides the following Statement of Undisputed Facts in Support of their Motion for Summary Judgment:

### PARTIES, JURISDICTION & VENUE

1.　Plaintiff, Alexx Lee is a twenty-two year old African American male who is, and was during all time relevant to this action, a resident of Cook County, Illinois, and a United States Citizen (Exhibit 1, Complaint and Exhibit 2, Deposition of Alexx Lee, p. 8).

2.　Defendant Officer Joseph McNeal ("McNeal") is and was at all times relevant hereto an African American sworn officer of the Dolton Police Department. (Exhibit 1, Complaint).

3.　Defendant Village of Dolton Police Department is a department of municipal entity, Village of Dolton. (Exhibit 1, Complaint).

4. Defendant Village of Dolton is a municipal entity which employs the Defendant McNeal. (Exhibit 1, Complaint).

## FIREARMS TRAINING/RECERTIFICATION

5. The police academy includes training that it is allowable for an officer to draw one's firearm when there is a possible threat of officer safety. (Exhibit 6, Deposition of Detective Major Coleman, pp. 35-36, Exhibit 4, Deposition of Detective John Frasure, pp. 32-33).

6. The Dolton Police Department has a field training program when an officer starts with the department to familiarize officers with the Rules and Regulations of the department. (Exhibit 6, Deposition of Detective Major Coleman, p. 36, Exhibit 10, Affidavit of Guy Lindsey).

7. The Dolton Police Department Rules and Regulations also require that officers recertify each year with their service weapon. (Exhibit 6, Deposition of Detective Major Coleman, p. 36, Exhibit 10, Affidavit of Guy Lindsey).

8. The Dolton Police Department has both a "Firearms Use/Display" and "Use of Force" policy within their Rules and Regulations, as well as a General Order #94-18 on Use of Force. (Exhibit 10, Affidavit of Guy Lindsey, Exhibit 6, Deposition of Detective Major Coleman, p. 36).

9. The Glock is an accepted firearm in many police departments. (Exhibit 6, Deposition of Detective Major Coleman, p. 35).

10. Officer McNeal had trained/certified in the use of his service weapon, a Glock, as far back as the police academy in 2002 and he was very familiar with that weapon. (Exhibit 3, Deposition of Officer Joseph McNeal, pp. 8, 10, 12).

11. Since becoming a Dolton police officer, McNeal has taken additional training, including at least three classes a year involving firearms training. (Exhibit 3, Deposition of Officer Joseph McNeal, pp. 10-11).

## DISPLAY AND USE OF FIREARMS-- DOLTON POLICE DEPARTMENT

12. Officers may not draw or display their firearm in any place except for necessary inspection or use. (Exhibit 4 , Deposition of Detective John Frasure, p. 23-24,32, Exhibit 8, Deposition of Officer Anthony Bankhead, p. 28, Exhibit 6, Deposition of Detective Major Coleman, p. 10-11, Exhibit 9, Rules and Regulations 2.10, Firearms Use/Display).

13. An officer may draw his handgun when his life or the lives of others are in imminent danger, or if his safety is threatened or compromised. (Exhibit 4, Deposition of John Frasure, p. 23-24,32, Exhibit 8, Deposition of Officer Anthony Bankhead, p. 28, Exhibit 6, Deposition of Detective Major Coleman, p. 10-11, 35-36, Exhibit 7, Deposition of Officer Marlon Harris, p. 9, Exhibit 5, General Order #94-18, Use of Force, p. 1).

14. An officer is to make his or her own determination as to when they believe their or another's safety is at risk and it is appropriate to draw a weapon. (Exhibit 6, Deposition of Detective Major Coleman, p. 11, Exhibit 5, General Order #94-18, Use of Force, p. 1).

15. Officers firing a gun, either accidentally or intentionally, except on a target range, are to report same in writing to the Chief of Police. (Exhibit 4, Deposition of Detective John Frasure, p. 19, Exhibit 9, Rules and Regulation 2.10, Firearms Use/Display).

16. Officers shall not intentionally fire their guns, except as authorized by law or at a firearms range. (Exhibit 6, Deposition of Major Coleman, p. 10-11, Exhibit 9, Rules and Regulation 2.10, Firearms Use/Display).

17. The Village of Dolton Police Department requires all officers to complete field training to familiarize them with the rules and regulations of the police department. (Exhibit 6, Deposition of Detective Major Coleman, p. 36, Exhibit 5, General Order #94-18, p. 2, 4).

18. The Village of Dolton Police Department requires all officers to recertify themselves in firearm's training with regard to their service weapon. (Exhibit 6, Deposition of Detective Major Coleman, p. 36, Exhibit 5, General Order #94-18, p. 2, 4).

19. The Village of Dolton allows its officers to use discretion as to how to operate a drawn weapon. (Exhibit 6, Deposition of Detective Major Coleman, p. 36, Exhibit 5, General Order #94-18, p. 1).

## USE OF FORCE -- DOLTON POLICE DEPARTMENT

20. Officers are trained on the appropriate use of force. (Exhibit 6, Deposition of Detective Major Coleman, p. 10-11, 36, Exhibit 9, Rules and Regulation 2.17, Use of Force).

21. The Dolton Police Department trains its officers to recognize and respect the value and special integrity of human life. In vesting its police officers with the lawful authority to use force to protect the public welfare, it trains its officers to balance all human interests. (Exhibit 5, General Order #94-18, Use of Force).

22. Dolton Police Department training includes that police officers shall use only that force that is reasonably necessary to effectively bring an incident under control, while protecting the lives of the officer or another. (Exhibit 4, Deposition of Detective John Frasure, p. 23-24, 32, Exhibit 8, Deposition of Detective Anthony Bankhead, p. 28, Exhibit 6, Deposition of Detective Major Coleman, p. 10-11, Exhibit 7, Deposition of Officer Marlon Harris, pp. 9-10, Exhibit 5, General Order #94-18, Use of Force).

23. Dolton Police Officers are trained to fire their weapons in order to protect the police officer or other from what is reasonably believed to be an immediate threat of death or serious bodily harm or prevent the escape of a fleeing felon whom the officer has probably cause to believe will pose a significant threat to human life should escape occur. (Exhibit 4, Deposition of Detective John Frasure, p. 23-24, 32, Exhibit 8, Deposition of Detective Anthony Bankhead, p. 28, Exhibit 6, Deposition of Detective Major Coleman, p. 10-11, Exhibit 7, Deposition of Officer Marlon Harris, pp. 9-10, Exhibit 5, General Order #94-18, Use of Force).

24. Dolton Police Officers are not to draw or exhibit their firearm unless circumstances create reasonable cause to believe that it may be necessary to use the weapon in conformance with this policy. (Exhibit 4, Deposition of Detective John Frasure, p. 23-24, 32, Exhibit 8, Deposition of Detective Anthony Bankhead, p. 28, Exhibit 6, Deposition of Detective Major Coleman, p. 10-11, Exhibit 7, Deposition of Officer Marlon Harris, pp. 9-10, Exhibit 5, General Order #94-18, Use of Force).

25. Dolton Police Officer training teaches that it is proper and reasonable for an officer to draw his weapon if his life or someone else's life is in danger. (Exhibit 4, Deposition of Detective John Frasure, pp. 32-33.

26. Detective/Acting Sergeant John Frasure has testified that it is reasonable for an officer to draw his weapon when going into an area that is of known drug activity and gun activity. (Exhibit 4, Deposition of Detective John Frasure, pp. 32-33).

27. Village of Dolton Police Officers shall not discharge their weapon when it appears likely an innocent person may be injured. (Exhibit 4, Deposition of Detective John Frasure, p. 23-24, Exhibit 5, General Order #94-18, Use of Force).

28. Authorized weapons are those which the police officer has qualified and received departmental training on proper and safe usage, and that are registered and comply with departmental specification. (Exhibit 5, General Order #94-18, Use of Force).

29. The Village of Dolton Police Department schedules regular training and qualification session for duty, off-duty and specialize weapons, which will be graded on a pass/fail basis. (Exhibit 3, Deposition of Joseph McNeal, p. 10, Exhibit 6, Deposition of Detective Major Coleman, pp. 35-36, Exhibit 5, General Order #94-18, Use of Force).

30. Police officers who fail to receive a passing score with their duty weapon(s) in accordance with the department testing procedures shall be relieved of their police powers and immediately reassigned to non-enforcement duties. (Exhibit 5, General Order #94-18, Use of Force).

31. A written report prepared according to departmental procedures will be required when a firearm is discharged outside of the firing range and when the use of force results in death or injury. (Exhibit 4, Deposition of Detective John Frasure, pp. 9, 19, Exhibit 8, Deposition of Sergeant Anthony Bankhead, pp. 12-13, 16-17, Exhibit 5, General Order #94-18, Use of Force).

32. A supervisor will be immediately summoned to the scene and will comply with investigative procedures as required by the department in the case of a firearm discharge. (Exhibit 3, Deposition of Officer Joseph McNeal, pp. 27-28, Exhibit 5, General Order #94-18, Use of Force).

## **INCIDENT OF JULY 10, 2007**

33. On July 10, 2007, Officer McNeal and his partner Detective Timothy McPherson were patrolling the afternoon shift as members of the tactical unit. (Exhibit 3, Deposition of Officer Joseph McNeal, p. 14).

34. Officer McNeal was a passenger in an unmarked police vehicle, driven by his partner Detective McPherson. (Exhibit 3, Deposition of Officer Joseph McNeal, p. 14).

35. At approximately 11 p.m. on July 10th 2007, Officer McNeal and Detective McPherson, along with another squad car, responded to a call reporting possible drug activity among multiple black males at 14928 Evers Street. (Exhibit 6, Deposition of Detective Major Coleman, pp. 15, 18, Exhibit 3, Deposition of Officer Joseph McNeal, p. 15).

36. There have been frequent calls complaining of drug activity at or near 14928 Evers and as a result, the location was known throughout the Dolton Police Department for its heavy drug presence. (Exhibit 7, Deposition of Officer Marlon Harris, p.39, 47, Exhibit 8, Deposition of Detective Anthony Bankhead, p. 22, Exhibit 4, Deposition of Officer John Frasure, p. 32, Exhibit 6, Deposition of Detective Major Coleman, pp. 15).

37. It is common knowledge at Village of Dolton Police Department that gun shots have been fired in the area of 149th and Evers on previous occasions and the area is known to have frequent gun activity. (Exhibit 7, Deposition of Officer Marlon Harris, p.39, 47, Exhibit 4, Deposition of Officer John Frasure, p. 32).

38. Upon arrival at the block of 14928 Evers, the officers observed approximately five to eight individuals standing in the front of and on the porch of 14928 South Evers. (Exhibit 4, Deposition of Officer John Frasure, p. 11, Exhibit 3, Deposition of Officer Joseph McNeal, p.17).

39. Upon noticing law enforcement officers, these individuals fled on foot westbound through a gangway towards an alley. (Exhibit 3, Deposition of Officer Joseph McNeal, p. 16).

40. In response, Officer McNeal exited the police vehicle and pursued the fleeing suspects from the north while McPherson pursued in the vehicle from the south. (Exhibit 3, Deposition of Officer Joseph McNeal, p. 18 and 19).

41. Officer McNeal had been called to this area on previous occasions and was familiar with where the drug activity usually occurs. (Exhibit 3, Deposition of Officer Joseph McNeal, p. 18).

42. Officer McNeal proceeded to check every gangway for suspects. (Exhibit 3, Deposition of Officer Joseph McNeal, p. 15 and 21).

43. During his inspection Officer McNeal came upon a gangway where he noticed the silhouettes of two individuals walking towards him from about five to seven feet away. (Exhibit 3, Deposition of Officer Joseph McNeal, p. 22 and 24).

44. At this point McNeal had a flashlight in his right hand and his service revolver in his left hand as he is left-handed. (Exhibit 3, Deposition of Officer Joseph McNeal, p. 20).

45. Officer McNeal was unable to see if there was anything in the hands of either individual. (Exhibit 3, Deposition of Officer Joseph McNeal, p. 22).

46. Officer McNeal's flashlight malfunctioned, resulting in his limited vision. (Exhibit 3, Deposition of Officer Joseph McNeal, p. 22).

47. Officer McNeal announced his office and ordered both individuals to "get on the ground." (Exhibit, 2, Deposition of Alexx Lee, p. 39, Exhibit 3, Deposition of Officer Joseph McNeal, p. 23).

48. As the individuals continued to walk towards Officer McNeal he observed that one man had his hands in his pockets and the other had his hands to his side. (Exhibit 3, Deposition of Officer Joseph McNeal, p. 24).

49. Neither man obeyed Officer McNeal's initial order to "Get on the ground", and so he repeated his command approximately five seconds later. (Exhibit 3, Deposition of Officer Joseph McNeal, p. 27).

50. Alexx Lee never saw Officer McNeal's weapon. (Exhibit 2, Deposition of Alexx Lee, p. 39).

51. As Officer McNeal repeated his command to "Get on the ground" he took a step towards the men he stumbled, accidentally discharging a round, striking the man. (Exhibit 3, Deposition of Officer Joseph McNeal, pp. 23, 38-39).

52. Medical treatment was immediately called for Mr. Lee. (Frasure dep. p. 33) (McNeal pp.27-28).

53. A supervisor was called and a report was made regarding the accidental shooting. (McNeal pp. 27-28, Frasure p. 19).

54. The Illinois State Police Public Integrity Unit also investigated and the incident was ruled an accidental shooting. (McNeal p. 39).

55. McNeal had never an incident before where his gun discharged and someone was shot. (McNeal p. 36).

Respectfully Submitted,

Village of Dolton and Joseph McNeal

By: /s/ Larry S. Kowalczyk, Esq.
One of Their Attorneys

Larry S. Kowalczyk, Esq. (# 6225367)
Mary E. McClellan, Esq. (# 6283486)
QUERREY & HARROW, LTD.
175 West Jackson, Suite 1600
Chicago, Illinois 60604
Phone: 312-540-7544
Document #: 1344002