**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| ALEXX LEE, | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 C 6856 |
| v. | ) | |
| | ) | Judge Der-Yeghiyan |
| JOSEPH McNEAL, INDIVIDUALLY and IN HIS OFFICIAL CAPACITY AS AN AGENT OF DOLTON POLICE DEPARTMENT and VILLAGE OF DOLTON) and VILLAGE OF Dolton | ) ) ) | Magistrate Judge Denlow |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF DENIAL OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now comes Plaintiff ALEXX LEE by and through his attorneys CHADWICK and LAKERDAS and request this court to deny Defendant's Motion for Summary on Counts I, II, III, V, VI, and VII of plaintiff's complaint as there are issues of material fact on all counts which would defeat Summary Judgment as a Matter of Law. In support of said denial plaintiff hereby submits his memorandum of Law and states:

**STATEMENT OF FACTS:**

Plaintiff incorporates and restates its statement of material facts provided pursuant to L.R. 56.1 as its statement of facts as though fully stated herein.

**INTRODUCTION**

Plaintiff Alexx Lee filed a seven count complaint against the defendants to recover damages for his injuries when he was shot by Defendant Joseph McNeal on July 10, 2007, in the Village of Dolton. Alexx Lee alleges that the shooting violated his civil rights and that the Defendant OfficerJoseph McNeal's conduct

was tortuous. Defendant Joseph McNeal has denied all of plaintiff Alexx Lee's allegations. Defendant Joseph McNeal has now moved for summary judgment in spite of the fact that almost all of the facts in this case are in dispute and summary judgment should be denied as a matter of law.

## ARGUMENT

A motion for summary judgment should only be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, If any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). :summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. There is no such issue unless there is sufficient evidence favoring the nonmoving party for jury to return verdict for that party. In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided tat one pary must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-243 (1986).

In a motion for summary judgment all facts and inferences are to be viewed in a light most favorable to the non-moving party. *Vokadinovich v. Board of Sch. Trustees*, 978 F. 2d 403, 408 (7th Cir. 1992), Cert. denied, 510 U.S. 844, 114 S. Ct. 133, 126 L. Ed. 2d 97 (1993).

## FACTS

On July 16, 2007 Alexx Lee was visiting his friend, Haley Thompson at 14928 S. Evers in the Village of Dolton. S.O.F. 3. That just prior to being shot Alexx Lee was in Thompson's basement with Haley's brother, Sean Lamont Thompson. S.O.F. 4. They stepped out the side door on the north side of the house to smoke a cigarette. S.O.F. 4. That after he had finished smoking a cigarette Alexx Lee took two steps toward the front of the house heard someone yell "freeze" and was immediately shot as he was raising his hands. S.O.F 3,7. Just prior to being shot he saw two plain clothed police officers approaching. SS.O.F. 7 Sean Thompson was in front of Alexx Lee and saw one of the two officers draw his gun and fire it, striking Alexx Lee in the stomach. S.O.F. 8. Alexx Lee did not have his hands in his pockets nor was he holding anything in his hands when he was shot. S.O.F 9.

At some time prior to Alexx Lee being shot, a citizen called the Dolton Police Department to report that six to seven individuals were selling drugs at 149th & Evers on the front porch of a vacant house. S.O.F. 12. The Dolton Police dispatcher announced over the radio that there was <u>possible</u> (emphasize added) drug activity at 149th & Evers outside a vacant house. S.O.F. 2. The responding officers asked for a specific address and the dispatcher replied that she didn't have a street address, but that the activity was taking place in front of a vacant house. S.O.F. 2. Officer McNeal and McPhearson were the first officers to arrive in the vicinity of 149th & Evers. S.O.F. 18 Unfortunately it was Officer McNeals' first day on the tactical force for the Dolton Police Department and he

had not received any tactical force training prior to that day. S.O.F. 26. McNeal was getting familiar with how the tactical team operates and was going through on the job training with the tactical force. S.O.F. 23. Dolton Police Department did not offer any specific training prior to starting this new assignment nor did they offer any use of force training to any of their officers. S.O.F 26, 29.

When officers McNeal and McPhearson approached 14928 S. Evers McPhearson saw one person on the porch of 14928 S. Evers and two people by the side of the house. S.O.F. 18. As the officers approached in their car the individual on the porch and the other two individuals nonchalantly walked towards the back of the house. S.O.F. 18. Generally when officer McPhearson rolls on a group of kids who are doing something wrong they take off like a at out of hell. S.O.F. 20.

After passing the individuals in their squad car McPhearson dropped off McNeal at the end of the block and according to McNeal he immediately drew his Glock 9 Millimeter automatic service weapon. S.O.F. 27. McNeal states he started to walk northbound along Evers with his flashlight in his right hand and his Glock automatic in his left hand. S.O.F. 9. McNeal checked a number of gangways using his flashlight. S.O.F. 9 His flashlight worked in every gang way he checked except where the shooting took place. S.O.F. 10. However after he shoots Alexx Lee "for some miraculous reason" his flashlight works again. S.O.F. 10. When McNeal shoots Alexx Lee it is very dark and all he can see is two silhouettes walking toward the front of 14928 S. Evers on the north side of the house. S.O.F. 30. When McNeal sees the two silhouettes he has no idea

who they are and he shoots Alexx Lee. S.O.F. 30. When McNeal first sees the silhouettes he is five to seven feet away from them. S.O.F. 30. McNeal says he ordered the two silhouettes to get to the ground, but they continued to walk toward him, he approached another five feet and shot Alexx Lee from two to three feet. S.O.F. 30. All of these events occur before midnight of July 10, 2007. McNeal contends that he stumbled and accidentally shot Alexx Lee. S.O.F. 12.

Officer Bankhead responded to shots fired, arrived at the scene and completed the report for the shooting at 3:30 a.m. on July 11th. S.O.F. 15. Bankhead interviewed Officer McNeal, Officer McPhearson, and Officer Guess. S.O.F. 15. In the case report there is no mention of an accidental discharge or of McNeal stumbling causing his weapon to fire. S.O.F. 16. At his deposition, McNeal is not sure what caused him to "stumble" and not one hundred percent sure how his weapon discharged as he did not fall to the ground. S.O.F. 31. McPhearson, McNeal's partner, was the first officer to approach McNeal after he shot Alexx Lee. S.O.F. 34. McNeal then called officer Frasure. S.O.F. 33. Frasure was the only officer at the scene that McNeal spoke to about the shooting. S.O.F. 33. McNeal and Frasure then left the scene and went back to the station. S.O.F. 33. McPhearson didn't know how Alexx Lee was shot until he got back to the station. S.O.F. 34.

Officer Bankhead wrote up the case report on the shooting of Alexx Lee. S.O.F. 15. Bankhead was an experienced police officer. S.O.F. 32. He had eight years with the Dolton Police Department and prior to that he had ten years with the Chicago Housing Authority Police. S.O.F. 32. He had post college

classes in both report writing and investigations. S.O.F. 32. Officer Bankhead was assigned to the call of shoots fired and arrived on the scene in about one minute at 11:24 p.m. on July 10th, 2007. S.O.F. 32. When he arrived at the scene he did not know who fired the shots. S.O.F. 32. Officers McNeal, McPhearson, Guess, Coleman, Harris, and Frasure were all at the scene of the shooting. Bankhead did not speak with McNeal at the scene, and to this day has never spoke with Coleman, Harris, or Frasure about the shooting. S.O.F. 32.

Bankhead only spoke with Officer Guess, who arrived after the shooting, and McPhearson. S.O.F. 15. When Bankhead interviewed McPhearson at the scene McPhearson didn't know who shot Alexx Lee. S.O.F. 35. At the station McNeal corroborated Bankhead's report that he was starting to chase Lee when he shot him. S.O.F. 13. McNeal was not anymore specific about how the shooting occurred only that his weapon discharged. S.O.F. 14.

McPhearson, Guess and McNeal all corroborated the narrative on the case report at the station, stating that McNeal was chasing subjects when his weapon discharged. S.O.F. 15.

If McNeal had told Bankhead he stumbled and his weapon discharged he would have stated that it was an accidental shooting and put that in his report. S.O.F. 16.

McNeal denied speaking with anybody about the shooting except Frasure. S.O.F. 35.

1. **McNeal is not entitled to qualified immunity.**

Defendant McNeal cited appropriate law on this issue and Plaintiff need

not recite the law as Plaintiff adopts and incorporates the defendant's cites as his own.

Defendants states that plaintiff Alexx Lee has failed to demonstrate that defendant McNeal directly participated in any infraction set out by *Hilderbrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 103a (7th Cir 2003).

Defendant states that McNeal and all others involved have determined that the shooting of Alexx Lee was an accident. "All others" were told it was an accident. How the shooting occurred is a question of fact. Alexx Lee has not determined it was an accident. And "all others" involved have never talked to McNeal about what happened accept Bankhead. Bankhead's own report doesn't state it was an accidental shooting.

When the case report was written Officer McNeal, Bankhead, McPhearson, and Guess did not ever mention the word "accident" or accidental shooting, or stumbling. They agree that Alexx Lee was shot while running away. McNeal now testifies he stumbled. The report states that Alexx Lee fled, McNeal chased him and shot Alexx Lee. Alexx Lee stated he was walking toward the front of his friends house and was shot when he was ordered to "freeze". Thompson told Alexx Lee that McNeal didn't draw his weapon until right before he shot Alexx Lee. There are many different accounts of the shooting. Therefore it is a question of facts as to how the shooting took place.

McNeal also testifies that he draws his gun as soon as he exits his car. Drawing your weapon when there is no immediate threat of injury or death is a direct violation to Village of Dolton's Order # 94-18 use of force.

The pertinent parts of the use of force Order # 94-18 are as follows:

IV. Procedures A. Parameter for use of deadly force: weapons in order to:

1. Police officers are authorized to fire their weapons in order to:
    a. Protect the police officer or others from what is reasonably believed to be an <u>immediate threat</u> (emphasis added)of death or serious bodily harm.
2. Before using a firearm, police officer shall identify themselves and state their intent to shoot, when feasible.
3. Police officer shall adhear to the following restrictions when their weapon is exhibited.
    a. Police officer shall not draw or exhibit their firearm unless circumstances create reasonable cause to believe that it may be necessary to use the weapon in conformance with their policy.
    b. Firearms shall not be discharged when it appears likely that an innocent person may be injured.

When the rule is read as a whole it states that you can only exhibit your weapon when there is an immediate threat of death or serious bodily harm. We know that Officers Coleman and Guess who were at the same scene did not unholster their weapons, as there was no immediate threat.

The entire issue of "accidental shooting" is a question of fact to be determined at trial. A question of fact exist because on the night of the shooting neither Officer Bankhead, McNeal, Guess or McPhearson state that it was accident. A question of fact exists because the case report is at odds with Officer McNeal's testimony. A question of fact exists because McNeal's testimony is at odds with Alexx Lee's testimony. A question of fact exists because McNeal's testimony as to their account of the shooting. A question of fact exists because Thompson saw McNeal draw his weapon when he approached Lee. A question of fact exists because McNeal does not know why he stumbled or how he pulled the tigger. A question of fact exists because McNeal said he saw Alexx's hand in his pocket before shooting him which was denied by Alexx Lee. A question of facts exists as to McNeal's credibility due to different stories he has told relative to shooting Alexx Lee, and that Alexx Lee, Thompson, and the case report all contradict McNeal's story.

There is no question that McNeal "directly participated" in the "infraction" of shooting an unarmed individual who posed no risk to McNeal.

Plaintiff need only show personal involvement under *Hilderbrant*, to impose liability.

Since the issue of accidental or intentional shooting is a question of fact summary judgment would be improper.

II. <u>McNeal violated Alexx Lee's fourth and Fourteenth Amendment Rights.</u>

As the Court has stated in *Scott v. Harris* 127 S. Ct. 1769 (2007), "what is reasonable depends upon the particular of a given case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade flight.: In Alexx Lee's case he is not involved in any crime, he poses no threat to the safety of others and he is not resisting arrest. All he is doing is walking toward the front of this friends house when he is shot by McNeal. Lee satisfies the Courts requirement in Scott. It still remains a question of fact as to whether the shooting was accidental.

McNeal violated Alexx Lee's constitutional rights to be free from the States excessive and unnecessary force.

McNeal's entire account of the shooting is suspect. He testifies he "stumbles" while about two feet away from a "silhouette" but that he is still able to see that the silhouette has his hands in his pockets. He doesn't know how or why he stumbled, doesn't know how his finger got to the trigger, and while stumbling accidentally fires his gun making a perfect shot that brings down Alex Lee. He also has a "miraculous" flashlight that works prior to the shooting, after the shooting, but not doing the shooting. He fails to tell the investigating officer Bankhead, that he stumbles and that the shooting is an accident, but instead tells Bankhead he fires at a fleeing suspect. The ridiculesness is continued by listing Alexx Lee as the offender and McNeal as the victim on the case report. Once again, it is a question of fact as to accidental or intentional shooting of Alexx Lee and whether the Dolton Police use of force rules were followed. Therefore summary judgment is not appropriate.

III.   **The Village of Dolton has no training for use of force and no training of officers prior to being placed on the tactical unit.**

The Village of Dolton Police Department has rules regarding use of force but no training, and as do other police forces. Also the Village of Dolton Police Force has no specific training prior to officers being put on the tactical units. McNeal violated the department rules on drawing his weapon when there was no immediate threat. McNeal violated department rules when he shot Alexx Lee. At the very least it is a question of fact as to whether McNeal would have had his weapon drawn if he was with an experienced tact officer. It would also be question of fact as to whether McNeal would have drawn his weapon if the police department had a use of force training program.

Next there is direct causation between use of force training and the use of force that McNeal used in shooting Alexx Lee. McNeal's weapon should have been holstered as Coleman's and Guess's weapons were as there was no immediate threat.

McNeal should have been trained in General Order # 94-18 use of force and he would have known not to draw his weapon unless there is an immediate threat of death of bodily harm. Apparently other members of the force could use that training also if they believe they can draw their weapon when there is no immediate threat of death or bodily harm.

The key word is immediate threat. McNeal never testifies that there is an immediate threat of death or bodily harm.

IV.   McNeal's action are willful and wanton.

McNeal's actions are intentional. He pulls the trigger with the gun aimed at Alexx Lee. Before there was any threat perceived or otherwise he drew his weapon when he exited the squad car. At that point in time he doesn't even see anybody so there can be no "immediate threat." It's his first day on the tact unit and he doesn't know what to do. The call he responds to was "possible drug" activity at an unknown address. The people he sees before he gets out of the car may not even have been the people the anonyms callers was talking about. McNeal at most sees individuals leaving a porch. This does not authorize him to draw his

weapon. He has seen no criminal activity, no one has discharged any weapons, and he is in a residential neighborhood with other police officers.

Having his weapon drawn without an immediate threat shows utter indifference and conscious disregard for the safety of others.

Defendants then discusses special protection while effectuating the arrest of a suspect. First he wasn't arresting Alexx Lee, nor was he a suspect. Secondly Alexx Lee did not resist or threatened to resist arrest. Alexx Lee was putting his hands up when he was shot. Defendants admission that McNeal can draw his weapon because he is entering an area were drugs are sold further supports plaintiff's claim that McNeal was not properly trained nor properly supervised. Drawing and firing your weapon in violation of your own department's rules is willful and wanton conduct.

V. <u>McNeal shooting Alexx Lee is a Battery Shooting an unarmed individual without provocation falls within the definition of a battery.</u> When McNeal told Alexx Lee to freeze, Alexx Lee raised his hands and was then shot. Alexx Lee was never one of the people that McNeal was looking for. He was in the basement of a house that police were near. McNeal shot an innocent bystander without legal justification. Defendant keeps making this shot fired in the neighborhood argument. However there were no report of any shots fired that night. The entire shots fired testimony deals with the general area of where Alexx Lee was that night, not specifically the house he was at.

VI. Punitive damages:

If the Court finds that McNeal's actions were intentional or with reckless disregard and to the safety of Alexx Lee punitive damage will be appropriate.

## Conclusion

All facts must be construed in favor of the plaintiff in a motion for summary judgment. Since the most important facts are contested, viewed in light must favorable to the plaintiff summary judgment must be denied.

Respectfully Submitted,

/s/Michael G. Kelly on behalf of Sturgis E. Chadwick

_____
Michael G. Kelly

Sturgis E. Chadwick, III