IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALEXX LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 6856 |
| | ) | |
| JOSEPH McNEAL, INDIVIDUALLY | ) | |
| and IN HIS OFFICIAL CAPACITY AS | ) | |
| AN AGENT OF DOLTON POLICE | ) | |
| DEPARTMENT and VILLAGE OF | ) | |
| DOLTON, and VILLAGE OF DOLTON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment. For the reasons stated below, we grant in part and deny in part Defendants' motion for summary judgment.

## BACKGROUND

Plaintiff Alexx Lee ("Lee") alleges that on July 10, 2007, he was walking out of a friend's residence when he was approached by Defendant Officer Joseph

McNeal ("McNeal") and shot in the abdomen. Lee alleges that at no time prior to the shooting was he armed and that he did not take any action to threaten the physical safety of McNeal or any other citizen. Lee also claims that at the time he was shot, he was not an escapee for whom a criminal warrant had been issued and that McNeal had no reason to believe that a criminal warrant had been issued for him. Lee claims that McNeal had no factual or legal justification for shooting Lee in the abdomen. Lee brought the instant action and includes a claim brought pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging the use of excessive force (Count I), a failure to train *Monell* claim (Count II), a claim for willful and wanton tortious conduct under Illinois state law against Defendants (Count III), a negligence claim under Illinois state law against McNeal (Count IV), an assault claim under Illinois state law (Count V), a battery claim under Illinois state law (Count VI), and a claim for punitive damages against McNeal (Count VII). Defendants now move for summary judgment on all claims.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate

2

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I. Section 1983 Excessive Force Claim

Lee contends that McNeal exercised excessive force in shooting Lee and that McNeal's actions violated Lee's rights under the Fourth Amendment and Fourteenth

3

Amendment. Defendants argue that they are entitled to summary judgment on Lee's Section 1983 excessive force claim since McNeal is entitled to qualified immunity and Lee cannot show that McNeal's actions violated his constitutional rights. The central issue with respect to both Lee's excessive force argument and Defendants' argument that McNeal is entitled to qualified immunity is whether the undisputed evidence establishes that McNeal's shooting of Lee was purely accidental.

A. Facts Relating to the Shooting

It is undisputed that on the night of July 10, 2007, McNeal and his partner Detective Timothy McPherson ("McPherson") were on patrol in an unmarked vehicle as members of a tactical unit. (RSF Par. 33). Defendants do not dispute the fact that this was McNeal's first day on the tactical force. (RSAF Par. 23). It is also undisputed that, on that night, Lee was visiting friends at 14928 Evers Street ("Evers House") which was located adjacent to a vacant house near the corner of 149th Street and Evers Street in Dolton, Illinois. (RSAF Par. 3). The parties agree that some time that evening an anonymous citizen called the Dolton Police with a tip that drug sales were taking place at a vacant house near the corner of 149th Street and Evers Street. (RSAF Par. 2). The parties also agree that McNeal, McPherson, and other officers in another squad car responded to the call. (RSF Par. 35); (SAF Par. 18). Defendants have offered substantial evidence indicating that the area of 149th Street and Evers Street was an area known for heavy drug presence where there had been previous reports of gun activity. (SF Par. 36). Lee has disputed this fact, but has not pointed

4

to any evidence indicating that the area was not known for such drug activity and violence. (RSF Par. 36). As such, Defendant's statement that the area was known for drugs and violence is a fact that is deemed to be undisputed. *See Martino v. MCI Communications Servs., Inc.*, 2008 WL 2157170, at *1 (N.D. Ill. 2008)(stating that a "[c]ourt may disregard statements and responses that do not properly cite to the record"); *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003)(indicating that a denial is improper if the denial is not accompanied by specific references to admissible evidence or portions of the record representing admissible evidence).

The parties agree that McNeal and McPherson were the first officers to arrive on the scene where they witnessed several individuals in front of the Evers House, some of whom proceeded towards the back of the Evers House when McNeal and McPherson arrived. (SAF Par. 18); (RSAF Par.18). The parties do not dispute the fact that McNeal was dropped off from the squad car and approached the Evers House on foot while McPherson and the other squad car proceeded to drive to the back of the Evers House leaving McNeal alone in the front of the house. (SAF Par. 27); (RSAF Par. 27).

It is at this point that the parties offer conflicting versions of the events that followed. McNeal contends that he followed the individuals who fled towards the back of the house. Lee has put forth testimonial evidence that he exited the side door of the Evers House with his friend Haley Thompson ("Thompson") to smoke a cigarette. (SAF Par. 4). According to the evidence submitted by Lee, as Lee was

within two steps of the Evers House, he saw McNeal and Lee heard someone yell "freeze."  (SAF Par. 6-7).  Lee testified that as he was raising his hands in the air he was shot.  (SAF Par. 7).  Lee testified that he did not hold anything in his hands at the time of the shooting.  (SAF Par. 13).

Defendants offer evidence that McNeal entered the pathway between the vacant house and the Evers House with his service revolver drawn in his left hand and his flashlight in his right hand.  (SF Par. 44).  McNeal testified that he came upon two individuals walking towards him from about five to seven feet away.  (SF Par. 43).  McNeal testified that his flashlight malfunctioned and that the individuals appeared to him as only silhouettes.  (SF Par. 43, 46).  McNeal testified that he identified himself as a police officer and ordered both individuals to "get on the ground."  (SF Par. 46).  Defendants claim that neither man obeyed McNeal's request and continued in McNeal's direction.  (SF Par. 49).  Defendants point to McNeal's testimony that he waited five seconds and, after noticing that one of the individuals had his hands in his pockets, repeated his command to the individuals.  (SF Par. 48-49).  Lee disputes each of these facts attested by McNeal and points to Lee's own testimony that McNeal simply yelled "freeze" and immediately fired at Lee.  (RSF Par. 46); (SAF Par. 7).  Defendants allege that McNeal took a step forward, accidently discharging a round into Lee's abdomen.  (SF Par. 51).  The parties agree that medical assistance was immediately called for Lee.  (SF Par. 52).

6

B. Genuinely Disputed Material Facts

Both parties have relied heavily on testimonial evidence of the individuals involved in telling their respective versions of the events that occurred the night of the shooting. It is clear from the testimonial evidence that genuine factual disputes remain as to the exact events that occurred between the time that McNeal exited the squad vehicle in front of the Evers House and the time that Lee was shot in the abdomen. As explained further below, these factual disputes are material with respect to Lee's excessive force claim, since they relate to the reasonableness of McNeal's actions at the time he fired his weapon. Such a factual dispute is pertinent to the inquiry of whether McNeal would be entitled to qualified immunity and whether Lee can show a violation of his constitutional rights. Defendants argue that Lee has no evidence to contradict McNeal's testimony that the shooting was purely accidental and that such a fact should be deemed to be undisputed. (Mem. SJ 6). However, at this stage in the litigation, Lee is not required to affirmatively prove what was in the mind of McNeal when he pulled the trigger. Rather, the burden is on Lee to set forth facts which, when considered in a light most favorable to Lee set forth a reasonable basis for a jury to return a verdict in his favor. *Anderson*, 477 U.S. at 248.

Lee's testimony about the events leading up to the shooting, as well as discrepancies in the evidence submitted by Defendants could permit a reasonable trier of fact to conclude that the shooting was something other than a pure accident. For example, Lee points out that the original police report that was prepared by

another patrol officer indicated that McNeal engaged in a footchase and that McNeal discharged his weapon during that chase (SF Ex. 8). Lee also points out that the report did not include any reference to the fact that the shooting was an accident. (SF Ex. 8). Lee also points out that the original police report listed McNeal as the victim of a crime and Lee as the offender in the incident. (SF Ex. 8); (Bankhead Dep. 12-13). As Lee points out, such report is inconsistent with the version of events that Defendants currently set forth. Defendants dispute the relevance of the police report, citing the fact that the patrol officer who prepared it had not spoken to McNeal at the time the report was prepared. However, the patrol officer who prepared the report also testified that McNeal was interviewed, shown the report, and that McNeal did not add anything to the report to indicate that the shooting was accidental. (Bankhead Dep. 15-17).

Lee also points to discrepancies in the evidence that draws McNeal's version of the incident into question. For example, Lee points out that McNeal testified that his flashlight malfunctioned during the shooting, but "for some miraculous reason" began working immediately after the shooting. (Ans. 4); (McNeal Dep. 27). Defendants have presented explanations for the inconsistent police report in their reply but such explanations do not resolve the dispute. The discrepancies with respect to the initial police report combined with Lee's testimony about what he observed during the shooting, when viewed in a light most favorable to Lee, raise a genuine issue of fact with respect to the shooting. Defendants point out that the Illinois State Police Public Integrity Unit conducted an independent investigation and

concluded that the shooting was an accident. (SF Par. 54). However, such a conclusion does not make the evidence undisputed and Defendants will have the opportunity to present such evidence at trial. At this stage in the litigation the court cannot make fact determinations and weigh the credibility of the parties, which is the province of a jury. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)(stating that "summary judgment cannot be used to resolve swearing contests between litigants" and that "[w]here the parties present two vastly different stories . . . it is almost certain that there are genuine issues of material fact in dispute"). Thus, there are genuinely disputed facts that must be resolved at trial.

C. Qualified Immunity

Defendants argue that McNeal is entitled to qualified immunity and, as such, is entitled to summary judgment on Lee's excessive force claim. The doctrine of qualified immunity "protects 'government officials performing discretionary functions . . . from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would not have known.'" *Siebert v. Severino*, 256 F.3d 648, 654 (7th Cir. 2001)(quoting in part *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A state actor is not protected by the doctrine of qualified immunity if a reasonable state actor would know that what he is doing violates the Constitution. *Id.*; *Brokaw v. Mercer County*, 235 F.3d 1000, 1022 (7th Cir. 2000). In considering whether or not qualified immunity should be applied, "the court must decide: (1) whether the plaintiff has shown a violation of his

constitutional rights, and, if so, (2) whether those constitutional rights were clearly established at the time of the violation, 'such that a reasonable official would understand that what he was doing violates those rights.'" *Dunn v. City of Elgin*, 347 F.3d 641, 648 (7th Cir. 2003)(quoting in part *Morrell v. Mock*, 270 F.3d 1090, 1094 (7th Cir. 2001)).

    Defendants argue that, given that McNeal has stated that the shooting was an accident, the only act committed by McNeal that could be argued to have been a constitutional violation was his act of approaching the side of the Evers House with his gun drawn, rather than holstered. Defendants argue, however, that such an act by McNeal is not a violation of Lee's constitutional rights and, even if it were a violation of Lee's constitutional rights, such rights are not so clearly established that a reasonable state actor would know that approaching with a gun drawn was a violation of Lee's constitutional rights. However, as stated above, there are genuine issues of material fact with respect to the shooting and, when construing the facts in a light most favorable to Lee, summary judgment would not be appropriate. Individuals have a right under the Fourth Amendment to be free from the unreasonable use of deadly force by an officer. *Deluna v. City of Rockford*, 447 F.3d 1008, 1010 (7th Cir. 2006); *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). In construing the facts in a light most favorable to Lee, a reasonable trier of fact could conclude that McNeal used deadly force against Lee in a manner that was unreasonable under the circumstances. Thus, at this stage in the litigation,

Defendants have not shown as a matter of law that McNeal is entitled to qualified immunity.

### D. Constitutional Violation

Defendants also argue that, even if McNeal is not entitled to qualified immunity, Lee's Section 1983 claim for excessive force claim would fail since Lee has not set forth facts establishing that McNeal violated his constitutional rights. However, as indicated above, there are genuine issues of material fact relating to whether McNeal violated Lee's Fourth Amendment right to be free of unreasonable deadly force. Defendants argue that there was no unconstitutional seizure of Lee since McNeal was not acting with the intent of shooting Lee. However, whether the shooting was an accident or intentional is an issue of fact for the jury. Thus, Defendants are not entitled to summary judgment on Lee's Section 1983 excessive force claim.

## II. Failure to Train *Monell* Claim

Defendants argue that the Village is entitled to summary judgment on Lee's *Monell* claim since Lee has not shown that there was any constitutional violation, since Lee has not shown that there was a policy put in place by the Village reflecting a deliberate indifference to the risk of a constitutional violation, and since Lee has not put forth evidence to show a causal link between any policy of the Village and McNeal's shooting of Lee. For a Section 1983 *Monell* claim, a plaintiff must

establish: "(1) an express policy that, when enforced, causes a constitutional deprivation; or (2) that the constitutional injury was caused by a person with final policymaking authority." *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008); *see also Campbell v. Miller*, 499 F.3d 711, 720 (7th Cir. 2007)(stating that for a *Monell* claim a plaintiff must show that the misconduct resulted from "'(1) the enforcement of an express policy of the City, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority'")(quoting *McCormick v. City of Chicago,* 230 F.3d 319, 324 (7th Cir. 2000)). The Seventh Circuit has also stated that a *Monell* claim may be brought based on inadequate training or supervision by showing "(1) failure to provide adequate training in light of foreseeable consequences; or (2) failure to act in response to repeated complaints of constitutional violations by officers." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029-30 (7th Cir. 2006).

    Defendants argue that Lee has failed as a matter of law to show that there was a constitutional violation. However, as indicated above that issue cannot be resolved on summary judgment since there are genuinely disputed issues of material fact remaining with respect to the shooting. Defendants argue that even if Lee could show that there was a constitutional violation by McNeal, the Village would still be entitled to summary judgment since Lee has not put forth evidence to show that there was a custom or policy at the Village which permitted such a constitutional violation or caused such a constitutional violation to occur.

Lee argues in opposition to Defendants' motion for summary judgment on the failure to train *Monell* claim that it was the Village's failure to properly train McNeal that permitted McNeal to take the actions that he did and caused the shooting of Lee. Lee argues that because McNeal violated a departmental policy governing use and display of firearms, the facts indicate that there should have been more training. (Ans. 10). In advancing this argument, however, Lee is acknowledging that the Village did have a policy governing the drawing of weapons. Lee himself acknowledges the extensive policy for use of firearms promulgated by the Village which explicitly prohibited officers from using firearms in situations other than where the officer was protecting himself or others from what is reasonably believed to be an immediate threat of death or serious bodily harm. (Ans. 8). The policy further required officers to identify themselves and their intent to shoot prior to shooting. (Ans. 8). Finally, the policy also included a provision requiring that officers should not draw or exhibit firearms "unless circumstances create reasonable cause to believe that it may be necessary to use the weapon. . . ." (Ans. 8). Defendants have also offered voluminous evidence, which has not been disputed by Lee, regarding the extensive training and certification process for firearms that all police officers in the Village, including McNeal, were required to follow. (SF Par. 5-18). For example, it is undisputed that all officers were required to be certified for the use of their service weapon and recertified each year. (RSF Par. 7). Lee also does not dispute the fact that McNeal had been trained/certified in the use of his weapon as far back as 2002. (RSF Par. 10). Lee has pointed to no policy or custom

reflecting an indifference to Lee's constitutional rights. Lee has also failed to point to evidence that would indicate a failure to provide adequate training and has not produced evidence of prior complaints relating to this issue that went ignored by the Village. Lee argues that McNeal should have received more specialized training specifically related to the tactical unit but has not offered any evidence to show what type of training should have been applied or how it would have benefitted McNeal. Finally, the record is completely devoid of evidence that would so much as suggest that Lee's injuries were somehow caused by a policy or custom in the Village. All of the undisputed evidence put forth by both parties demonstrates that there was a comprehensive training and certification structure in place at the Village which was designed to protect the constitutional rights of citizens. Even if a reasonable trier of fact were to conclude that McNeal's actions violated Lee's constitutional rights, no reasonable trier of fact could conclude that the alleged constitutional deprivation was caused by a policy or custom of the Village. Therefore, we grant the Village's motion for summary judgment on the failure to train *Monell* claim.

III. State Law Claims

Lee has also brought claims under Illinois state law for assault, battery, and negligence. Defendants argue that they cannot be held liable for each of Lee's Illinois state law claims pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/2-101 *et seq*. Pursuant to the Illinois Tort Immunity Act, "a public employee is not liable for his act or omission in the execution or enforcement of any law unless such

act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. Furthermore, under the Illinois Tort Immunity Act, local public entities are not liable for the acts of an employee where the employee is not also liable. 745 ILCS 10/2-109. Under Illinois law, willful and wanton conduct is defined as "actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others." *Breck v. Cortez*, 490 N.E.2d 88, 94 (Ill. App. Ct. 1986).

With respect to the state law claims, Defendants once again argue that the undisputed evidence establishes that the shooting was accidental and, as such, McNeal's actions cannot be viewed as willful and wanton. However, as indicated above, there are genuinely disputed facts relating to the shooting that are for a jury to decide. Furthermore, as Illinois courts have found, willful and wanton conduct does not need to be an intentional act. *Carter v. Chicago Police Officers*, 165 F.3d 1071, 1081 (7th Cir. 1998)(stating that under Illinois law, willful and wanton conduct is not necessarily an intentional act). Conduct of an officer can still be considered willful and wanton if it is done in "reckless disregard for the safety of others." *Id*. Based on the evidence submitted by the parties, there is still an issue of fact as to whether the actions of McNeal were willful and wanton under the legal standard. A reasonable jury might conclude that under the circumstances it was reasonable for McNeal to have his gun drawn and that the shot he fired was an unfortunate accident that was not a reckless disregard for the safety of Lee. However, a reasonable jury might also conclude that McNeal, by his actions, was at the very least indifferent to the danger of the situation and the safety of those around him. Thus, we cannot find at this stage

in the litigation that Defendants are immune from suit on Lee's state law claims on the basis of the Illinois Tort Immunity Act.

Defendants' final argument with respect to the state law claims is that McNeal did not have the requisite intent to commit either an assault or a battery against Lee. Under Illinois law "[a] battery occurs when one 'intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact in an insulting or provoking nature with an individual.'" *Smith v. City of Chicago*, 242 F.3d 737 (7th Cir. 2001)(quoting in part 720 ILCS 5/12-3(a)). An assault has been defined as the "unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." *Parrish by Bowker v. Donahue*, 443 N.E.2d 786, 789 (Ill. App. Ct. 1982). Defendants' argument that McNeal lacked the requisite intent and that his actions were justified is based upon the conclusion that the undisputed facts establish that the shooting was an accident. However, as indicated above, there are material disputes with respect to the issue of whether the shooting was an accident. Thus, we deny Defendants' motion for summary judgment on Lee's state law claims.

IV. Punitive Damages

Defendants argue that if the court were to find that the undisputed facts established that McNeal's actions were not willful and wanton then the court should

also grant Defendants' motion for summary judgment with respect to the punitive damages claim as there would be no evidence of any intent to cause harm on McNeal's part. However, since we have not found that summary judgment is appropriate on Lee's state law claims and issues of fact remain surrounding the shooting, we deny the motion for summary judgment on the punitive damages claim.

## CONCLUSION

Therefore, based on the forgoing analysis, we grant Defendants' motion for summary judgment on the failure to train *Monell* claim in Count II. We deny Defendants' motion for summary judgment on all other claims.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 29, 2008